FOSTER WHEELER ENERGY CORPORATION, Plaintiff, v. LSP EQUIPMENT, LLC, *et al.*, Defendants (Dick Corporation, Cross-plaintiff-Appellant; LSP-Kendall Energy, LLC, *et al.*, Cross-defendants-Appellees).

Second District    No. 2—03—0963

Opinion filed February 25, 2004.

Stephen R. Swofford, Timothy A. Hickey, and Nancy G. Lischer, all of Hinshaw & Culbertson, of Chicago, and George S. Burkoski, Jr., of Thompson & Waldron, of Alexandria, Virginia, for appellant.

Dennis J. Powers and Daniel O. Halvorsen, both of Piper Rudnick, of Chicago, for appellees.

JUSTICE BYRNE delivered the opinion of the court:

This appeal arose from two contracts for the construction of a power plant located in Minooka, Illinois. The construction contracts contain forum-selection and choice-of-law provisions, which purport to require that disputes between the parties to the contracts be litigated in New York. Plaintiff, Foster Wheeler Energy Corporation, which is not a party to this appeal, initiated the underlying Illinois action, alleging a mechanic's lien foreclosure against defendants, LSP-Kendall Energy and LSP Equipment (collectively, LSP defendants), Dick Corporation, and Hitachi Zosen Corporation, which also is not a party to this appeal. Dick cross-claimed against LSP defendants to foreclose on Dick's own mechanic's lien claim. Pursuant to the forum-selection and choice-of-law provisions of the construction contracts, LSP defendants filed a complaint in New York federal court against Dick for breach of contract and then moved to stay Dick's mechanic's lien foreclosure cross-claim in the Illinois litigation, pending resolution of the New York claim. LSP defendants argued that the forum-selection and choice-of-law provisions in the construction contracts required that the disputes between the parties, including the claim underlying Dick's mechanic's lien foreclosure cross-claim, be litigated in New York. Dick argued that section 10 of the Building and Construction Contract Act (Act) (815 ILCS 665/10 (West 2002)), although enacted in July 2002 after the parties entered into the construction contracts, invalidated any Illinois construction contract provision that purported to choose the law or forum of another state for purposes of resolving disputes under the contracts. Dick also argued that because this is a procedural statute, it should be applied retroactively to void the parties' contractual forum-selection and choice-of-law provisions. The trial court disagreed and granted the motion to stay. Dick appeals the trial court's order. We affirm.

The following facts are not disputed. Kendall owns the Minooka

property upon which a power plant was to be constructed, and it served as the project's owner. LSP Equipment served as Kendall's captive retailer. On or about November 11, 1999, Kendall contracted individually with both the National Energy Production Company (NEPCO) and Dick to provide engineering, procurement, and construction for the project (EPC Agreement). In the EPC Agreement, Dick and Kendall agreed to litigate all disputes in New York. The EPC Agreement's forum-selection clause provides:

> "The Parties hereby submit themselves to the exclusive jurisdiction of the state and federal courts located in the state of New York for the purpose of litigating a Dispute under this Section 18.2 for the purpose of obtaining any preliminary relief related thereto."

Dick, together with LSP defendants and NEPCO, also entered into an interfacing agreement on or about November 12, 1999. The interfacing agreement sets forth certain understandings related to the interfacing among the parties in the exercise of their rights and performance of their obligations under the EPC Agreement with respect to the procurement of equipment for the project. In this agreement, Dick and LSP defendants agreed to submit to the jurisdiction of the New York state courts or the United States District Court for the Southern District of New York and also agreed to be governed by New York law. Section 3.2(b) of the interfacing agreement provides:

> "Any legal action or proceeding with respect to this Agreement and any action for enforcement of any judgment in respect thereof may be brought in the courts of the State of New York, in and for the County of New York, or of the United States of America for the Southern District of New York, and, by execution and delivery of this Agreement, the Contracting Party hereby accepts for itself and in respect of its property, generally and unconditionally, the non-exclusive jurisdiction of the aforesaid courts and appellate courts from any appeal thereof."

On or about March 20, 2000, LSP Equipment and Foster Wheeler entered into a purchase order agreement in which Foster Wheeler agreed to provide four heat recovery steam boilers for the construction of the project. Foster Wheeler initiated this lawsuit against defendants, seeking payment for the heat recovery boilers and other relief. In particular, Foster Wheeler alleged a mechanic's lien foreclosure action against Kendall; a breach of contract action against LSP Equipment for alleged failure to pay Foster Wheeler under the terms of the purchase order agreement; a breach of contract action against its subcontractor, Hitachi Zosen; an action against Dick for tortious interference with the Foster Wheeler-Hitachi subcontract; a declaratory judgment action concerning its warranty obligations to LSP

Equipment; and a declaratory judgment action against LSP Equipment concerning backcharge procedures under the Foster Wheeler purchase order agreement.

Dick filed to foreclose its mechanic's lien on the real estate. This foreclosure action came in the form of a cross-claim as a response to the allegations made in the foreclosure action filed by Foster Wheeler. Dick alleged that Kendall failed to pay Dick for work allegedly performed pursuant to the EPC Agreement. Dick alleged that it had performed under the EPC Agreement but that Kendall had breached the EPC Agreement and the interfacing agreement by failing to fully pay Dick and that, as a consequence, it was entitled to foreclose its mechanic's lien.

On April 21, 2003, pursuant to the forum-selection and choice-of-law provisions of the EPC Agreement and the interfacing agreement, LSP defendants filed a complaint against Dick in the United States District Court for the Southern District of New York, seeking resolution of the contract disputes and other claims alleged to be underlying Dick's foreclosure action. On the same date, LSP defendants filed a motion to stay Dick's mechanic's lien foreclosure action in the Illinois trial court, pending resolution of the New York federal district court's proceeding. LSP defendants based their motion to stay on their belief that the resolution of the disputes between the parties, including all claims underlying Dick's mechanic's lien foreclosure action, must be litigated in a New York forum pursuant to the forum-selection provisions of their contracts.

In response, Dick argued that section 10 of the Act (815 ILCS 665/10 (West 2002)) voided the forum-selection clauses in the parties' agreements and, therefore, the motion to stay should be denied. Section 10 voids any Illinois construction contract provision that purports to choose the law or forum of another state for purposes of resolving disputes under the contract.

On July 31, 2003, the trial court held that section 10, enacted on July 16, 2002, was not the law at the time the parties entered into the agreements, in 1999, and it could not be applied retroactively to invalidate the parties' agreements to litigate all disputes in New York. Accordingly, the trial court granted the motion to stay. Dick timely filed its notice of interlocutory appeal of the trial court's ruling staying its cross-claim.

■ The question of first impression before this court on appeal is whether section 10 of the Act is retroactive or merely prospective. Section 10 provides:

> "A provision contained in or executed in connection with a building and construction contract to be performed in Illinois that makes

the contract subject to the laws of another state or that requires any litigation, arbitration, or dispute resolution to take place in another state is against public policy. Such a provision is void and unenforceable." 815 ILCS 665/10 (West 2002).

Because this presents a question of statutory interpretation, our review is *de novo*. See *Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.*, 186 Ill. 2d 472, 480 (1999).

■ In *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 38 (2001), the supreme court adopted the retroactivity test developed by the United States Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244, 280, 128 L. Ed. 2d 229, 261-62, 114 S. Ct. 1483, 1505 (1994). Under *Landgraf*, the first step in undertaking the retroactivity analysis is to determine whether the legislature has clearly indicated the temporal reach of an amended statute. *Commonwealth Edison*, 196 Ill. 2d at 38. If so, then, absent a constitutional prohibition, that expression of legislative intent must be given effect. *Commonwealth Edison*, 196 Ill. 2d at 38. If not, the court must next determine whether applying the statute would have a retroactive effect, *i.e.*, whether it would impair rights that a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. *Commonwealth Edison*, 196 Ill. 2d at 38. If the statute would have a retroactive impact, then the court must presume that the legislature did not intend that it be so applied. *Commonwealth Edison*, 196 Ill. 2d at 38.

■ Although the parties do not cite this case, the supreme court in *Caveney v. Bower*, 207 Ill. 2d 82, 92 (2003), recently held that application of the *Landgraf* approach should prove "uneventful." This is so because, as the supreme court recently acknowledged in *People v. Glisson*, 202 Ill. 2d 499 (2002), "the legislature has clearly indicated the 'temporal reach' of *every* amended statute." (Emphasis in original.) *Caveney*, 207 Ill. 2d at 92. The legislature does so either expressly in the new statute or by default in section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2000)). Section 4 provides, in relevant part:

"No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding." 5 ILCS 70/4 (West 2000).

The court explained that the *Glisson* court construed section 4 as authorizing the retroactive application of amendments or repeals only if such changes are procedural. *Caveney*, 207 Ill. 2d at 92. Conversely, section 4 "forbids retroactive application of substantive changes to statutes." *Glisson*, 202 Ill. 2d at 507. The *Caveney* court therefore concluded that section 4 of the Statute on Statutes "represents a clear legislative directive as to the temporal reach of statutory amendments and repeals: those that are procedural in nature may be applied retroactively, while those that are substantive may not." *Caveney*, 207 Ill. 2d at 92. The court further concluded that "it is virtually inconceivable that an Illinois court will ever go beyond step one of the *Landgraf* approach." *Caveney*, 207 Ill. 2d at 94. In this way, "for purposes of *Landgraf*'s first step, the legislature *always* will have clearly indicated the temporal reach of an amended statute, either expressly in the new legislative enactment or by default in section 4 of the Statute on Statutes." (Emphasis in original.) *Caveney*, 207 Ill. 2d at 95.

■ We find it of no consequence that *Commonwealth Edison* and *Caveney* involved statutory amendments that evolved from prior versions of statutes, whereas the present case speaks only of a newly enacted statute that did not emanate from a prior legislative enactment. Before the enactment of section 10 of the Act, Illinois, consistent with the Supreme Court's holding in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 11-12, 32 L. Ed. 2d 513, 521, 92 S. Ct. 1907, 1914 (1972), readily enforced forum-selection clauses, unless enforcement contravened the strong public policy of the state in which the case was brought. See, *e.g.*, *English Co. v. Northwest Envirocon, Inc.*, 278 Ill. App. 3d 406, 410-12 (1996). The common law, where it has not been expressly abrogated by statute, is as much a part of the law of the state as the statutes themselves. *People ex rel. Board of Trustees of the University of Illinois v. Barrett*, 382 Ill. 321, 346 (1943). Thus, we find that the "pre-amended" version of section 10 manifested itself in the common law, and the enactment of section 10 abrogated prior case law just as the statutory amendments in *Commonwealth Edison* and its progeny overturned or amended prior versions of the statutes.

Moreover, we see nothing on the face of section 4 of the Statute on Statutes that confines its application only to statutory amendments or repeals of statutes. Section 4 speaks of "new *law*" and "former *law*," not statutes. Section 4 begins: "No new *law* shall be construed to repeal a former *law*, whether such former *law* is expressly repealed or not." (Emphasis added.) 5 ILCS 70/4 (West 2002). Accepting that the common law is a part of the law of the state and that words of a statute should be given their ordinary meaning, we find that section 4

is equally applicable in the present case, where a newly enacted statute overturned former case law, as it was in those cases like *Caveney*, where an amendment overturned a prior version of a statute. Both manifested the legislative intent to change the law, either substantively or procedurally.

■ Turning back to the issue, then, we must decide whether section 10 of the Act may be applied retroactively to void the parties' contract provisions. Therefore, we must ascertain whether the legislature has clearly indicated the temporal reach of the statute. See *Caveney*, 207 Ill. 2d at 95; *Commonwealth Edison*, 196 Ill. 2d at 38. To do so, we first examine the language of the new law. Clearly, the legislature did not indicate the temporal reach in section 10.

Dick argues that the use of present tense verbs in section 10 demonstrates an intent to apply the statute retroactively. This argument fails the test adopted by the supreme court in *Commonwealth Edison* and *Caveney* as well. The legislature must clearly express its intent that the statute be applied retroactively. *Commonwealth Edison*, 196 Ill. 2d at 38. For example, in *Commonwealth Edison*, the statutory amendment at issue stated that it " 'applies to all cases pending on or after the effective date of this amendatory Act of 1994,' " and expressly validated tax levies adopted " 'either before, on or after the effective date of [the amendatory Act].' " *Commonwealth Edison*, 196 Ill. 2d at 42, quoting Pub. Act 88—545, eff. January 1, 1995. The court found this language to be an "unequivocal expression of legislative intent" to apply the amendment retroactively and sufficient to meet the first prong of the *Landgraf* test. *Commonwealth Edison*, 196 Ill. 2d at 42. Statutes that merely provide that they are to "take[ ] effect upon becoming law," as section 99 of the Act does (see 815 ILCS 665/99 (West 2002)), do not contain a clear expression of legislative intent that they are to be applied retroactively. See *Jones v. Industrial Commission*, 335 Ill. App. 3d 340, 345 (2002). Accordingly, we reject Dick's argument and hold that section 10 of the Act applies prospectively.

Because the legislature's clear pronouncement is not found in the statute itself, *Caveney* teaches that we must look to the legislature's clear pronouncement in section 4 of the Statute on Statutes, which " 'forbids retroactive application of substantive changes to statutes.' " *Caveney*, 207 Ill. 2d at 95, quoting *Glisson*, 202 Ill. 2d at 506-07. Dick characterizes section 10 as procedural because it deals specifically with forum selection. We disagree. Clearly, the enactment of section 10 represents a substantive change in the law, not because it establishes whose law governs construction contracts in Illinois, but because it interferes with the parties' right to freely contract that issue, a right that previously existed. Because we assume that section 10 was framed

in view of the provisions of section 4, and that the legislature intended that the Act should have prospective operation only, we find that the trial court correctly granted LSP defendants' motion to stay.

Dick argues that, under the second prong of *Landgraf*, section 10 cannot have a retroactive impact. While we need not reach the second prong of the *Landgraf* test, we note that this argument nevertheless is inaccurate and misconstrues the true impact of section 10 on a party's vested contractual right. "[I]t is well settled that a party's rights under a contract become 'vested' for the purposes of the retroactive application of a statute when the contract is entered into rather than when the rights thereunder are asserted." *Prudential Property & Casualty Insurance Co. v. Scott*, 161 Ill. App. 3d 372, 381-82 (1987). The Supreme Court's opinion in *Landgraf* did not alter these principles, but reaffirmed the protection against retroactive application of a new statute to vested contract rights. The Court stated:

> "The largest category of cases in which we have applied the presumption against statutory retroactivity has involved new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance." *Landgraf*, 511 U.S. at 271, 128 L. Ed. 2d at 256, 114 S. Ct. at 1500.

In *Weisberg v. Royal Insurance Co. of America*, 124 Ill. App. 3d 864 (1984), the defendant-insurer sought to enforce its policy's one-year limitation period to commence suit. The plaintiff-insured attempted to rely on a statute, enacted subsequent to the issuance of the insurance policy, that tolled any contractual limitation period while a claim was pending. Despite the procedural nature of the tolling statute, the court declined to apply it retroactively because to do so would violate "the general constitutional principle that the legislature may not enact laws which impair the obligation of contracts." *Weisberg*, 124 Ill. App. 3d at 869. The court stated that "where a statute affects a contractual rather than a statutory limitation period, it has the effect of altering a mutually agreed upon term of the contract, and cannot be considered a mere change in statutory remedy or procedure." *Weisberg*, 124 Ill. App. 3d at 870; see also *Boyd v. Madison Mutual Insurance Co.*, 116 Ill. 2d 305, 309-10 (1987) (statute could not be applied retroactively because it would deprive insurer of its vested contractual right of subrogation).

None of the cases relied upon by Dick offer support. Neither *Ogdon v. Gianakos*, 415 Ill. 591 (1953), nor *Ores v. Kennedy*, 218 Ill. App. 3d 866 (1991), involved the retroactive application of a statute to void a party's contractual rights, as Dick is proposing here. *Ogdon* involved the retroactive application of a statute setting forth a means to serve process on a nonresident, and *Ores* involved changes to the Il-

linois long-arm statute. The retroactive application of those procedural rule changes did not impact any preexisting contract rights as section 10 would here.

*McGee v. International Life Insurance Co.*, 355 U.S. 220, 2 L. Ed. 2d 223, 78 S. Ct. 199 (1957), also offers no assistance. The Court in *McGee*, which enforced a new statute subjecting a Texas-based insurance company to jurisdiction in California, did not void or invalidate a contract provision that fixed venue elsewhere. The Court merely determined that a statute extending jurisdiction over insurance companies that issued policies to residents of California could be applied retroactively. Similar to *Ores* and *Ogden*, the statute did not impact any contractual rights as section 10 would.

We also reject *Kerr Construction, Inc. v. Peters Contracting, Inc.*, 767 So. 2d 610 (Fla. App. 5th Dist. 2000), and *Sawicki v. K/S Stavanger Prince*, 802 So. 2d 598 (La. 2001), relied on by Dick for the proposition that statutes invalidating forum-selection clauses can be applied retroactively. Both cases regarded their statutes as procedural rather than substantive. The court in *Kerr* considered the Florida statute procedural because it rendered void only a choice-of-forum clause and did not alter a choice-of-law provision. *Kerr Construction*, 767 So. 2d at 613. Moreover, in *Sawicki*, the court determined that the retroactive application of its statute did not implicate any preexisting contractual rights. *Sawicki*, 802 So. 2d at 604. In any event, *Kerr* and *Sawicki* were decided in other states and are not binding on Illinois courts. See, *e.g.*, *Mount Vernon Fire Insurance Co. v. Heaven's Little Hands Day Care*, 343 Ill. App. 3d 309, 320 (2003).

In sum, section 10 of the Act, enacted subsequent to the parties' agreements, does not contain the requisite expression of legislative intent that it be applied retroactively. According to *Caveney*, we must look to section 4 of the Statute on Statutes, which forbids retroactive application when there are substantive changes to a statute. Because section 10 substantively changed the law, retroactive application is prohibited. Moreover, applying section 10 to the parties' agreements would void contractual rights that are protected from the retroactive application of new legislation. Therefore, the trial court correctly found that section 10 could not be applied retroactively to void the parties' forum-selection and choice-of-law provisions. Accordingly, the trial court correctly granted LSP defendants' motion to stay.

For the foregoing reasons, the judgment of the circuit court of Kendall County is affirmed.

Affirmed.

McLAREN and KAPALA, JJ., concur.